UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| YVES DEUGOUE, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 1:23-cv-11615-IT |
| | * | |
| ICELANDAIR, EHF, | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM & ORDER

September 5, 2024

TALWANI, D.J.

Plaintiff Yves Deugoue, proceeding pro se, seeks damages and fees against Defendant
Icelandair, ehf ("Icelandair"), relating to a long-standing dispute that began with a claim for
damaged luggage. Am. Compl. [Doc. No. 27]. Now pending before the court is Defendant's
Motion to Dismiss [Doc. No. 28]. For the following reasons, the Motion to Dismiss [Doc. No.
28] is GRANTED as to Plaintiff's contract claim (which is governed by the Montreal
Convention and is therefore untimely) and libel per se claims (where the motion was unopposed)
and DENIED as to Plaintiff's promissory estoppel and Chapter 93A claims.

I.       **Facts as Alleged in the Amended Complaint**

Deugoue alleges the following, which the court accepts as true for purposes of the
pending motion:

On August 1, 2020, Deugoue flew on Icelandair from Reykjavik, Iceland, to Boston,
Massachusetts. Am. Compl. ¶¶ 5.01, 5.03 [Doc. No. 27]. Consistent with his itinerary, Deugoue's

luggage was checked to Boston. Id. ¶ 5.04. Upon arriving at Boston Logan Airport ("Logan Airport"), Deugoue retrieved his checked baggage to clear customs and discovered that his luggage and its contents were severely damaged. Id. ¶ 5.05. Deugoue inquired about an Icelandair office or counter where he could report the damage but was told (and confirmed for himself) that all the Icelandair offices and counters at Logan Airport were closed. Id. ¶ 5.06. At the time, the Covid-19 pandemic "was in full swing," and Icelandair, like most other airlines, was operating with ground operations on a reduced schedule. Id. n.11. Deugoue was told by Logan Airport authorities to make a claim regarding his damaged luggage on Icelandair's website. Id. ¶ 5.08.

The following day, Deugoue traveled from Boston to Dallas, Texas, on a separate itinerary on a flight operated by Delta Airlines. Id. ¶¶ 5.03-5.04.

Deugoue submitted a claim for the damaged luggage on Icelandair's website on August 8, 2020. Id. ¶ 5.09. Icelandair responded by asserting that the claim was not proper because Deugoue had not reported his damaged bag to Icelandair's authorities at Logan (even though no Icelandair services were available in Boston), and was not timely (even though the claim had been submitted within seven days). Id. ¶ 5.10; see also Am. Compl., Exhibit C. After Deugoue refuted Defendant's initial response, Icelandair asked Deugoue to send a photograph of the damaged luggage. Id. ¶ 5.14; see also Am. Compl., Ex. D & E. On December 26, 2020, Deugoue sent Icelandair a picture of the damaged luggage, along with a professional assessment of the damage. Id. ¶ 5.15. Icelandair did not challenge the authenticity of the photographs Deugoue submitted. Id. ¶ 5.16

On February 9, 2021, instead of assessing Deugoue's claim, Icelandair told him that he should file his claim with Delta Airlines because he was scheduled to take a flight with that

carrier after his flight with Icelandair. Id. ¶ 5.17. Icelandair directed him to make this claim, though it knew, and should have known, that Delta Airlines was not the airline with which Plaintiff was to seek compensation for the damaged luggage. Id. ¶ 5.21. Deugoue reported his claim to Delta Airlines as instructed by Icelandair; Delta Airlines informed Plaintiff that the responsibility for his damage luggage lay exclusively with Icelandair. Id. ¶ 5.18. On April 22, 2021, Deugoue wrote to Icelandair, stating that he was informed by Delta Airlines that responsibility for the damaged luggage lies with Icelandair. Id. ¶ 5.19; see also id., Ex. F (4/22/2021 Email) [Doc. No. 26-7]. After Deugoue sent the April 22, 2021 email, Icelandair ceased responding to Deugoue's communications. Id. ¶ 5.23.

On December 15, 2021, Deugoue filed a complaint against Icelandair with the U.S. Department of Transportation's Office of Consumer Protection. Id. ¶ 5.25. On January 7, 2022, that office directed Icelandair to "acknowledge receipt" of Plaintiff's complaint within 30 days and provide a substantive response within 60 days. Id. ¶ 5.26. Icelandair ignored this directive. Id. ¶ 5.27.

On February 6, 2022, Deugoue filed a complaint against Icelandair with the Better Business Bureau. Id. ¶ 5.28. Icelandair did not respond. Id. ¶ 5.29.

On May 6, 2022, Deugoue sent a demand letter to Icelandair, threatening civil action if it failed to respond. Id. ¶ 30. On May 19, 2022, Icelandair replied, acknowledged liability, and offered to compensate Deugoue $1,761 for his damaged luggage. Id. ¶ 5.31. When Deugoue refused that amount, Icelandair reversed its acknowledgement of liability and in an email accused Deugoue of making a fraudulent claim. Id. ¶ 5.32.

On June 12, 2022, Deugoue sent another demand letter to Icelandair, once again threatening legal action, and claiming repeated violations of Massachusetts Consumer Protection

Law, including Massachusetts General Laws Chapter 93A. Id. ¶ 5.33. Icelandair did not reply. Id. ¶ 5.34.

Also in June 2022, Plaintiff filed a civil action in Texas state court against Icelandair. Id. ¶ 4.02. Icelandair argued in filings in that court that Plaintiff's claims were preempted by the Montreal Convention. Id. The Texas state court concluded that it lacked personal jurisdiction over Defendant and dismissed that action on April 11, 2023. Id. ¶ 4.02 n.9.

## II.     Relevant Procedural History

Deugoue initiated this action on July 17, 2023. Compl. [Doc. No. 1]. After Defendant sought to dismiss the action for failure to state a claim, Plaintiff filed an Amended Complaint [Doc. No. 27]. Plaintiff asserts that this court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 "because the matters in controversy involve a federal question; namely, the scope of Article 19 of the Montreal Convention[,]" but also contends that claims "that can be characterized as nonperformance claims are outside the scope of the Montreal Convention, and are therefore not preempted by the same." Id. ¶ 4.02. Deugoue asserts further that this court has jurisdiction over the dispute because there is complete diversity between the parties and the amount in controversy exceeds $75,000. Id. ¶ 4.04.

Deugoue asserts four claims, labelled: nonperformance of contract, promissory estoppel, violation of Massachusetts consumer protection law (Massachusetts General Laws Chapter 93A), and libel per se, id. ¶¶ 8.00, et seq. (Causes of Action).

Defendant moved to dismiss the Amended Complaint on several grounds, including that the Montreal Convention exclusively governs the action and bars Plaintiff's claims. Def. Motion to Dismiss [Doc. No. 28]. Defendant submitted numerous documents in connection with the motion and the court directed Defendant to elect to proceed without those documents or have the

4

motion converted to one for summary judgment. Elec. Order [Doc. No. 43] (citing Fed. R. Civ. P. 12(d)). Defendant proceeded with the motion to dismiss without the documents and on a narrower basis, see Def. Mem. [Doc. No. 45], to which Plaintiff filed an Opposition and, in the alternative, a request for leave to amend the complaint [Doc. No. 46].

### III.    Standard of Review

####    A.    Subject Matter Jurisdiction

"Federal courts are obliged to resolve questions pertaining to subject-matter jurisdiction before addressing the merits of a case." Acosta-Ramirez v. Banco Popular de Puerto Rico, 712 F.3d 14, 18 (1st Cir. 2013). "Federal courts are courts of limited jurisdiction," so "federal jurisdiction is never presumed." Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998). The party asserting jurisdiction has the "burden of demonstrating the existence of federal jurisdiction." Id.

####    B.    Motions to Dismiss for Failure to State a Claim

In evaluating a motion to dismiss for failure to state a claim, the court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). To survive dismissal, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. at 555 (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In general, a complaint filed <u>pro se</u> is "liberally construed" and held to "less stringent standards than formal pleadings drafted by lawyers." <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976) (quoting <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972)). That does not mean that <u>pro se</u> plaintiffs need not plead facts sufficient to state a claim or establish jurisdiction, but it does afford them some leniency when facing a motion to dismiss. <u>See</u> <u>Ferranti v. Moran</u>, 618 F.2d 888, 890 (1st Cir. 1980).

## IV.   Discussion - Subject Matter Jurisdiction

### A.   <u>Diversity Jurisdiction</u>

Plaintiff asserts that this court has diversity jurisdiction. Diversity jurisdiction requires that the case arise between "citizens of different states" or "citizens of a State and citizens or subjects of a foreign state" and have an amount in controversy that exceeds $75,000. 28 U.S.C. § 1332(a). Here, the citizenship requirements of diversity jurisdiction are met—Deugoue is a citizen of Texas and Icelandair is a foreign corporation headquartered in Iceland. Am. Compl. ¶¶ 1.01-1.02 [Doc. No. 27].

The general principles concerning the determination of amount in controversy are fairly settled. "When a statute includes a jurisdictional amount requirement, the district court must determine whether the matter in controversy stated in the complaint exceeds the prescribed amount before it properly assumes jurisdiction over the case." 14AA Fed. Prac. & Proc. Juris. § 3702 (4th ed.). The First Circuit has directed that determining the amount-in-controversy for purposes of subject-matter jurisdiction should "be done quickly, without an extensive fact-finding inquiry." <u>Spielman v. Genzyme Corp.</u>, 251 F.3d 1, 4 (1st Cir. 2001). Plaintiffs have the burden of showing that their claims meet the amount-in-controversy requirement. 28 U.S.C.A. § 1332(a). "If, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff

6

cannot recover the amount claimed to be in controversy, for purpose of establishing diversity jurisdiction, or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, the suit will be dismissed." Stewart v. Tupperware Corp., 356 F.3d 335, 338 (1st Cir. 2004).

The only dollar amount mentioned in the Complaint is Icelandair's offer of $1,761 that was subsequently withdrawn. See Am. Compl. ¶ 5.31 [Doc. No. 27]. The rest of Deugoue's requests for damages in his Amended Complaint [Doc. No. 27] are as follows:

- Nonperformance of Contract (Count 1): Deugoue alleges he "has suffered and will continue to suffer severe emotional distress and severe emotional damage, and has suffered and will continue to suffer damage, including economic damages, mental anguish, humiliation and loss of enjoyment of life and seeks "the appropriate compensatory damages, exemplary/punitive damages, double/treble damages, costs, attorneys' fees, expert fees, statutory penalty interest, and pre and post-judgment interest." Id. ¶¶ 8.01.05, 8.01.08.

- Promissory Estoppel (Count II): Deugoue alleges he "has sustained damages that exceed the jurisdictional minimum of this court, including economic damages [and] mental anguish" and seeks largely the same relief as for Count I. Id. ¶¶ 8.02.05, 8.02.07. Deugoue also asserts that Icelandair "promised Plaintiff that it would compensate Plaintiff with the sum of $1,761." Id. ¶ 8.02.02.

- Violation of M.G.L. c. 93A (Count III): Deugoue alleges he "has sustained damages, including mental anguish," and that "Defendant is liable in the amount of said damages, as well as, including, without limitation, such costs, attorneys' fees, expert fees, statutory penalty interest, treble damages, damages for mental anguish, and pre and post-judgment interest[.]" Id. ¶¶ 8.03.10, 8.03.11.

- Libel Per Se (Count IV): Deugoue alleges he "has suffered and will continue to suffer severe emotional distress and severe emotional damage, feels unsafe and alienated in his local community, and has suffered and will continue to suffer damage, including economic damages, damages to his reputation and damage to current and/or prospective business relations, mental anguish, and loss of enjoyment of life" and asserts that "punitive damages or enhanced damages or double/treble damages are warranted." Id. ¶¶ 8.04.20-21.

- Conclusion/Prayer for Relief: Deugoue asks for "a. Compensatory damages to the maximum jurisdictional limit of this Court: (i) Actual damages; (ii) Economic and non-economic damages; b. Punitive Damages/Exemplary damages, double/treble damages, and statutory penalty damages[;] c. Pre-

judgment and post-judgment interest at the highest lawful rate; d. Reasonable
and necessary attorneys' fees and expenses and/or pro se litigant's expenses; e.
Costs of suit; and f. Such other relief, general and special, to which Plaintiff is
entitled to at law and/or in equity, and/or which the Court deems proper. Id.
¶ 12.01.

The court finds Deugoue's recitations of damages insufficient to support diversity

jurisdiction. The only damage amount articulated in the Amended Complaint is the $1,761

Icelandair offered Deugoue for his damaged baggage. But Deugoue rejected that sum and

expressly asserts that he is *not* seeking recovery for his damaged baggage. The rest of Deugoue's

allegations speak in "general terms" and "offer[] no particulars," a method of pleading amount-

in-controversy which the First Circuit rejected in Abdel-Aleem v. OPK Biotech LLC, 665 F.3d

38, 43-45 (1st Cir. 2012).

Accordingly, the court does not have jurisdiction based on diversity jurisdiction.

B.  Federal Question Jurisdiction

Plaintiff cites the Montreal Convention but says it does not apply. As Plaintiff predicted,

however, Defendant argues that the Montreal Convention bars Plaintiff's state law claims.

Accordingly, the court considers whether there is federal question jurisdiction based on

Defendant's assertion that the Montreal Convention bars Plaintiff's claims.

1.  Complete Preemption – General Principles

"[P]reemption by federal law is a defense that ordinarily does not give rise to federal

question jurisdiction." BIW Deceived v. Local S6, Indus. Union of Marine and Shipbuilding

Workers of America, Inc., 132 F.3d 824, 831 (1st Cir. 1997) (citing Caterpillar, Inc. v. Williams,

482 U.S. 386, 392 (1987)). However, "Congress may so completely pre-empt a particular area

that any civil complaint raising this select group of claims is necessarily federal in character."

Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64 (1987).

In cases of field preemption, "the States are precluded from regulating conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance." Arizona v. United States, 567 U.S. 387, 399 (2012). "[W]hether the regulation of an entire field has been reserved by the Federal Government is, essentially, a question of ascertaining the intent underlying the federal scheme." Hillsborough Cnty, Fla. v. Automated Med. Lab'ys., Inc., 471 U.S. 707, 714 (1985).

The Constitution provides that the power to join and execute treaties rests with the President and Congress, not the States. See, e.g., Boehringer-Manheim Diagnostics, Inc. v. Pan American World Airways, Inc., 737 F.2d 456, 459 (5th Cir. 1984) (citing U.S. Const. art. VI cl. 2). Accordingly, state law claims may be completely preempted by a multilateral treaty. See El Al Israel Airlines, Ltd. V. Tsui Yuan Tseng, 525 U.S. 155, 176 (1999) (emphasizing preemptive effect of Warsaw Convention (the predecessor to the Montreal Convention) on state personal injury claims).

### 2.   The Montreal Convention

The Montreal Convention is a multilateral treaty to which the United States is a party that "applies to all international carriage of persons, baggage or cargo performed by aircraft for reward." Amended Mem. ISO Mot. to Dismiss Ex. A at Art. 1.1 (Text of Montreal Convention) [Doc. No. 45-1]. "International carriage" is defined in part as any carriage in which the point of origin and the destination are situated within the territories of two State Parties. Id. at Art. 1.2. Article 29 of the Convention provides: "In the carriage of passengers, baggage, and cargo, any action for damages, however founded, whether under this convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention[.]" Id. at Art. 29. Where the Montreal Convention applies, it has preemptive

force for passenger claims arising from injuries suffered on board an aircraft or during

embarkation or disembarkation, see Moore v. British Airways PLC, 32 F.4th 110, 115 (1st Cir.

2022), and is the "sole avenue for relief" for claims that fall within its damages provisions. Dagi

v. Delta Airlines, Inc., 961 F.3d 22, 27 (1st Cir. 2020). The parties do not dispute that Iceland and

the United States are both State Parties to the Montreal Convention.

Article 17.2 of the Convention provides:

> The carrier is liable for damage sustained in case of destruction or loss of, or of
> damage to, checked baggage upon condition only that the event which caused the
> destruction, loss or damage took place on board the aircraft or during any period
> within which the checked baggage was in the charge of the carrier. However, the
> carrier is not liable if and to the extent that the damage resulted from the inherent
> defect, quality or vice of the baggage. In the case of unchecked baggage,
> including personal items, the carrier is liable if the damage resulted from its fault
> or that of its servants or agents.

Accordingly, as to circumstances where the Montreal Convention applies, the court has

jurisdiction.

### 3.  Application of the Montreal Convention

The question is whether Deugoue's claims of misconduct by Icelandair fall within the

scope of Article 17(2), the Convention's provision on damaged baggage. The court finds that the

Montreal Convention does not cover the gravamen of the Amended Complaint, which concerns

Icelandair's handling of the dispute after Deugoue filed a timely claim, but that it does apply to

Deugoue's contract claim.

#### a.  Plaintiff's Claim for Promissory Estoppel, Libel Per Se, and Violation of Chapter 93A

Plaintiff's claim for promissory estoppel (relating to the offer of $1,761 that was later

withdrawn), libel per se (relating to the accusations that Plaintiff had submitted a fraudulent

claim), and Chapter 93A claim (relating to Defendant's handling of his claim), are not covered

by the Montreal Convention. These claims are directed instead at Icelandair's purported

"misconduct that took place long after Plaintiff's luggage was under Icelandair's custody." See

Pl.'s Opp. 14 [Doc. No. 46].

Few cases explicate the meaning of Article 17(2), but a straightforward reading of the

text indicates that these three claims fall outside its scope. Article 17(2) expressly limits a

carrier's liability for damage to baggage to damage that occurs when the baggage is in the charge

of the carrier, meaning when a bag is in the airline's possession or custody. See Chattopadhyay v.

Aeroflot Russian Airlines, 2011 WL 13220279, at *9(C. D. Cal. Aug. 17, 2011); Rosenbrock v.

Deutsche Lufthansa, A.G., Inc., 2016 WL 2756589, at *22 (S. D. Tex. May 9, 2016). The events

central to these three claims transpired several months to years after his flight from Reykjavik to

Boston and all occurred after Deugoue had retrieved his baggage in Dallas. The events at issue

cannot reasonably be interpreted as occurring during a period when the checked baggage was in

the charge of the carrier.

Accordingly, the court finds that Deugoue's state claims for promissory estoppel, libel per

se, and Chapter 93A violations based on the interactions between Deugoue and Icelandair do not

fall under the scope of the Montreal Convention. As such, the court has no subject matter

jurisdiction over the claims unless it has subject matter jurisdiction over the contract claim and

can for that reason assert pendant jurisdiction.

        b.    Plaintiff's Contract Claim

The only agreement on which Plaintiff's nonperformance of contract claim could be

based is Plaintiff's ticket for passage with Icelandair. See American Airlines, Inc. v. Wolens, 513

U.S. 219, 230 (1995) (affirming that airline "ticket contracts" are enforceable under state

contract laws). In support of his nonperformance claim, Deugoue cites In re Nigeria Charter

Flights Contract Litigation, 520 F.Supp. 447 (E.D.N.Y. 2007), but that case is inapposite. In

Nigeria Charter Flights, the passenger-plaintiff sued for breach of contract because the defendant

airline "failed to transport as scheduled due to its discontinuation of flight operations." <u>Id.</u> at 449. The court found that the failure to transport sounded in nonperformance of contract, which is not preempted by the Montreal Convention, rather than transport delay, which is. <u>Id.</u> at 454. Here, however, Deugoue was transported, so his claims relating to the contract (damage to his baggage) do not allege nonperformance and do fall within the Montreal Convention's ambit.

Deugoue does not contest that the Montreal Convention governs any compensation he might seek for his damaged baggage. <u>See</u> Pl.'s Opp. 14 [Doc. No. 46]. But regardless of whether he is seeking damages for the baggage itself or emotional distress and punitive damages related to the damaging of the bag, to the extent that the claims are contract based, they are covered by the Montreal Convention. Accordingly, the court considers this state contract claim as a federal claim under the Montreal convention.

## V.     Motion to Dismiss for Failure to State a Claim

### A.   Preempted and Barred by Montreal Convention

Defendant seeks dismissal of Plaintiff's claims for damages to his baggage, and for emotional distress and punitive damages as barred under Montreal Convention. To the extent that Defendant's argument is directed to Plaintiff's claims for promissory estoppel, libel per se, and violations of Chapter 93A, those claims are not preempted by the Montreal Convention, as discussed above. To the extent that the argument is directed to Plaintiff's breach of contract claim, Defendant is correct that that claim is subject to the Montreal Convention's two-year statute of limitations. "The two year period begins to run 'from the date of arrival at the destination . . . or from the date on which carriage stopped.'" <u>Eke v. Deutsche Lufthansa</u>, 2013 WL 12201891, at *10 (D. Mass. Oct. 2, 2013) (quoting Montreal Convention, Art. 35). Here, Deugoue's travel ended on August 1, 2020, as to Icelandair, and August 2, 2020 (when he arrived

in Dallas) as to Delta. The two-year limitations period for Plaintiff's claims thus expired in August 2022, and this action was not filed until nine months later, on July 17, 2023. Accordingly, Plaintiff's breach of contract claim is untimely and must be dismissed.

B.  Libel Per Se

Defendant moves to dismiss Plaintiff's libel per se claim for lack of publication, where Plaintiff has not identified any third party to whom Defendant purportedly published its email denying his baggage claim as fraudulent. Def. Mem. 14 [Doc. No. 45]. Plaintiff does not respond to this argument. Accordingly, where Plaintiff has failed to meet his burden of plausibly alleging that the email at issue was published by Defendant to a third party, see Arsenault v. Allegheny Airlines, Inc., 485 F. Supp. 1373, 1379 (D. Mass. 1980), the libel per se claim is dismissed.

VI.    **Conclusion**

For the foregoing reasons, Icelandair's Motion to Dismiss [Doc. No. 28] is GRANTED as to Plaintiff's contract and libel per se claims and DENIED as to Plaintiff's promissory estoppel and Chapter 93A claims. No later than September 26, 2024, the parties shall state their positions (with supporting law) as to whether the court has jurisdiction over the remaining causes of action or should dismiss them without prejudice to allow Plaintiff to file them in Massachusetts state court.


IT IS SO ORDERED

September 5, 2024                                    /s/ Indira Talwani
                                                     United States District Judge

13