UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| YVES DEUGOUE, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * Civil Action No. 1:23-cv-11615-IT |
| | * |
| ICELANDAIR, EHF, | * |
| | * |
| Defendant. | * |

MEMORANDUM & ORDER

July 8, 2025

TALWANI, D.J.

Pending before the court is a Motion for Judgment on the Pleadings [Doc. No. 52] by Defendant Icelandair, ehf ("Icelandair"), which seeks to dismiss all remaining claims by Plaintiff Yves Deugoue, proceeding pro se. Deugoue's longstanding dispute with Icelandair concerns its handling of his claim for damaged luggage. See generally Am. Compl. ¶ 8.00 [Doc. No. 27].

The court previously granted in part Icelandair's Motion to Dismiss [Doc. No. 28], dismissing Deugoue's breach of contract claim as preempted by the Montreal Convention and the libel per se claim for lack of publication. See Mem. & Order 12–13 [Doc. No. 47]. The court denied the motion as to the remaining claims for promissory estoppel and violation of M.G.L. c. 93A ("Chapter 93A"), and directed the parties to "state their positions . . . as to whether the court has jurisdiction over the remaining causes of action[.]" Id. at 13. Because Icelandair's position statement raised a potential defense of federal preemption under the Airline Deregulation Act of 1978 ("Airline Deregulation Act"), see Def.'s Position Statement 3 [Doc. No. 48], the court found that it "will exercise supplemental jurisdiction over the remaining state law claims, at least

until that federal preemption question is resolved[,]" Elec. Order [Doc. No. 50]. The court directed Icelandair to file an Answer to the Amended Complaint and "a Motion for Judgment on the Pleadings raising the [Airline Deregulation Act] preemption defense[,]" noting that Icelandair may alternatively "waive its [Airline Deregulation Act] preemption defense and the court will dismiss [Deugoue's] remaining state law claims without prejudice so that he may refile his suit in state court." Id.

Icelandair then filed its Motion for Judgment on the Pleadings [Doc. No. 52]. For the following reasons, the Motion is DENIED and the case is dismissed without prejudice to Deugoue refiling his remaining claims in state court.

I.     **Facts as Alleged in the Amended Complaint**

Deugoue alleges the following, which the court accepts as true for purposes of the pending motion:

On August 1, 2020, Deugoue flew on Icelandair from Reykjavik, Iceland, to Boston, Massachusetts. Am. Compl. ¶¶ 5.01, 5.03 [Doc. No. 27]. Consistent with his itinerary, Deugoue's luggage was checked to Boston. Id. ¶ 5.04. Upon arriving at Boston Logan Airport ("Logan Airport"), Deugoue retrieved his checked baggage to clear customs and discovered that his luggage and its contents were severely damaged. Id. ¶ 5.05. Deugoue inquired about an Icelandair office or counter where he could report the damage but was told (and confirmed for himself) that all the Icelandair offices and counters at Logan Airport were closed. Id. ¶ 5.06. At the time, the Covid-19 pandemic "was in full swing," and Icelandair, like most other airlines, was operating with ground operations on a reduced schedule. Id. n.11. Deugoue was told by Logan Airport authorities to make a claim regarding his damaged luggage on Icelandair's website. Id. ¶ 5.08.

The following day, Deugoue traveled from Boston to Dallas, Texas, on a separate itinerary on a flight operated by Delta Airlines. Id. ¶¶ 5.03–5.04.

Deugoue submitted a claim for the damaged luggage on Icelandair's website on August 8, 2020. Id. ¶ 5.09. Icelandair responded by asserting that the claim was not proper because Deugoue had not reported his damaged bag to Icelandair's authorities at Logan (even though no Icelandair services were available in Boston) and was not timely (even though the claim had been submitted within seven days). Id. ¶ 5.10; see also id., Ex. C [Doc. No. 26-4]. After Deugoue refuted Icelandair's initial response, Icelandair asked Deugoue to send a photograph of the damaged luggage. Am. Compl. ¶ 5.14 [Doc. No. 27]; see also id., Exs. D & E [Doc. Nos. 26-5, 26-6]. On December 26, 2020, Deugoue sent Icelandair a picture of the damaged luggage, along with a professional assessment of the damage. Am. Compl. ¶ 5.15 [Doc. No. 27]. Icelandair did not challenge the authenticity of the photographs Deugoue submitted. Id. ¶ 5.16.

On February 9, 2021, instead of assessing Deugoue's claim, Icelandair told him that he should file his claim with Delta Airlines because he was scheduled to take a flight with that carrier after his flight with Icelandair. Id. ¶ 5.17. Icelandair directed him to make this claim, though it knew, and should have known, that Delta Airlines was not the airline with which Deugoue was to seek compensation for the damaged luggage. Id. ¶ 5.21. Deugoue reported his claim to Delta Airlines as instructed by Icelandair; Delta Airlines informed Deugoue that the responsibility for his damaged luggage lay exclusively with Icelandair. Id. ¶ 5.18. On April 22, 2021, Deugoue wrote to Icelandair, stating that he was informed by Delta Airlines that responsibility for the damaged luggage lay with Icelandair. Id. ¶ 5.19; see also id., Ex. F (April 22, 2021 Email) [Doc. No. 26-7]. After Deugoue sent the April 22, 2021 email, Icelandair ceased responding to Deugoue's communications. Am. Compl. ¶ 5.23 [Doc. No. 27].

On December 15, 2021, Deugoue filed a complaint against Icelandair with the U.S. Department of Transportation's Office of Consumer Protection. Id. ¶ 5.25. On January 7, 2022, that office directed Icelandair to "acknowledge receipt" of Deugoue's complaint within 30 days and provide a substantive response within 60 days. Id. ¶ 5.26. Icelandair ignored this directive. Id. ¶ 5.27.

On February 6, 2022, Deugoue filed a complaint against Icelandair with the Better Business Bureau. Id. ¶ 5.28. Icelandair did not respond. Id. ¶ 5.29.

On May 6, 2022, Deugoue sent a demand letter to Icelandair, threatening civil action if it failed to respond. Id. ¶ 5.30. On May 16, 2022, Icelandair replied, acknowledged liability, and offered to compensate Deugoue $1,761 for his damaged luggage. Id. ¶ 5.31. When Deugoue refused that amount, Icelandair reversed its acknowledgement of liability and in an email accused Deugoue of making a fraudulent claim. Id. ¶ 5.32.

On June 12, 2022, Deugoue sent another demand letter to Icelandair, once again threatening legal action, and claiming repeated violations of Massachusetts Consumer Protection Law, including Chapter 93A. Id. ¶ 5.33. Icelandair did not reply. Id. ¶ 5.34.

Also in June 2022, Deugoue filed a civil action in Texas state court against Icelandair. Id. ¶ 4.02. The Texas state court concluded that it lacked personal jurisdiction over Icelandair and dismissed that action on April 11, 2023. Id. ¶ 4.02 n.9.

## II.    Standard of Review

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Where "a motion for judgment on the pleadings 'is employed as a vehicle to test the plausibility of a complaint, it must be evaluated as if it were a motion to dismiss . . . .'" Shay v. Walters, 702 F.3d 76, 82 (1st Cir. 2012).

In evaluating a motion to dismiss for failure to state a claim, the court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). To survive dismissal, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. at 555 (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In general, a complaint filed pro se is "liberally construed" and held to "less stringent standards than formal pleadings drafted by lawyers." Estelle v. Gamble, 429 U.S. 97, 106 (1976) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)). That does not mean that pro se plaintiffs need not plead facts sufficient to state a claim or establish jurisdiction, but it does afford them some leniency when facing a motion to dismiss. See Ferranti v. Moran, 618 F.2d 888, 890 (1st Cir. 1980).

### III. Discussion

The threshold question for the court to consider is whether the Airline Deregulation Act preempts Deugoue's remaining claims.[1]

---

[1] Deugoue contends this argument was not raised in Icelandair's motion to dismiss and was therefore waived. See Pl.'s Opp. 10–11 [Doc. No. 56]. But the preemption defense is raised in Icelandair's Answer [Doc. No. 51], and has been briefed at the court's direction to resolve whether the court has subject matter jurisdiction, see Elec. Order [Doc. No. 50]. Moreover, "principles of estoppel do not apply [to subject matter jurisdiction], and a party does not waive

5

"[P]reemption is strong medicine, not casually to be dispensed." Brown v. United Airlines, Inc., 720 F.3d 60, 71 (1st Cir. 2013) (citation omitted). The Airline Deregulation Act expressly preempts "a State . . . [from] enact[ing] or enforc[ing] a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b)(1). The First Circuit has interpreted the scope of this preemption clause to include state common law tort and contract claims, so long as such claims are sufficiently "related to a price, route, or service of an air carrier[.]" Bower v. Egyptair Airlines Co., 731 F.3d 85, 93 (1st Cir. 2013) (citations omitted).

Icelandair argues that "[Deugoue's] promissory estoppel and Chapter 93A claims should be dismissed because they relate to an Icelandair 'service' – specifically the handling of damaged baggage claims." Def.'s Mem. ISO Mot. for J. on the Pleadings ("Def.'s Mem.") 8 [Doc. No. 53]. The court disagrees.

The First Circuit has adopted a "broad[] view of 'service,' which . . . includes items such as the handling of luggage, in-flight food and beverage provisions, ticketing, and boarding procedures." Bower, 731 F.3d at 94.[2] In DiFiore v. Am. Airlines, Inc., for example, the First Circuit considered a baggage service in which the airline charged passengers a $2 fee "for each bag checked with porters who provide curbside service" at the airport. 646 F.3d 81, 82 (1st Cir. 2011). Some of those porters sued the airline, "[a]rguing the passengers mistook the fee for a

---

the requirement by failing to challenge jurisdiction early in the proceedings[,]" Fafel v. Dipaola, 399 F.3d 403, 410 (1st Cir. 2005) (citation omitted).

[2] Deugoue advances a much narrower interpretation of "service" adopted by the Ninth Circuit as only reaching the frequency and scheduling of transportation, see Pl.'s Opp. 16 & n.62 [Doc. No. 56] (citing Charas v. Trans World Airlines, Inc., 160 F.3d 1259, 1265–66 (9th Cir. 1998)), but the First Circuit has examined Charas and expressly "decline[d] to follow this approach." Bower, 731 F.3d at 94.

6

mandatory gratuity for the [porters] and stopped tipping," and consequently that the "curbside check-in fee violated a Massachusetts statute governing tips" in addition to various state common law claims. Id. at 82, 84. The First Circuit adopted a view that "depends on reading . . . 'service' to include steps that occur before and after the airplane is actually taxiing or in flight[,]" and found the Massachusetts tips law "directly regulates how an airline service is performed . . . not merely how the airline behaves as an employer or proprietor." Id. at 87–88.

But here the conduct at issue is not the steps before or after an airplane is taxiing or in flight, but Icelandair's handling of disputes with customers long after they have returned home from their travels. Icelandair attempts to frame Deugoue's claims as "all aris[ing] from and flow[ing] from a single event – damage to his bag[,]" Def.'s Mem. 8–9 n.4 [Doc. No. 53], but that mischaracterizes the claims as alleged in the pleadings.[3] The promissory estoppel claim is based on allegations that Icelandair "after nearly two years had elapsed since damage to [Deugoue's] luggage and contents thereof[] promised [Deugoue] that it would compensate [him] with the sum of $1,761[,]" a promise which Deugoue allegedly relied on and Icelandair failed to perform. Am. Compl. ¶¶ 8.02.02–8.02.05 [Doc. No. 27]. The Chapter 93A claim is similarly based on Icelandair "refus[ing] to grant relief in bad faith[.]" Id. ¶ 8.03.09. The injury complained of is not the damaged baggage, or even the claim handling at the airport, but Icelandair's conduct in the drawn-out dispute resolution process with Deugoue. Cf. Mem. &

---

[3] Moreover, the two cases Icelandair cites for this "single event" theory are from other jurisdictions concerning the Montreal Convention and with inapposite facts. See Ong v. Am. Airlines, Inc., 2022 WL 447082, at *1 (N.D. Tex. Feb. 14, 2022) (emotional distress and other claims arise from airline's removal of plaintiff during embarking process of flight, which she alleged was racially motivated); Omolu v. Delta Air Lines, Inc., 2013 WL 12061846, at *4 (N.D. Ga. June 26, 2013) (refusal to return medical equipment during disembarking resulted in passenger's death, which resulted in plaintiff's emotional distress).

7

Order 10 [Doc. No. 47] ("the gravamen of the Amended Complaint . . . concerns Icelandair's handling of the dispute after Deugoue filed a timely claim"); id. at 11 ("The events central to these [promissory estoppel and Chapter 93A] claims transpired several months to years after [Deugoue's] flight from Reykjavik to Boston and all occurred after Deugoue had retrieved his baggage in Dallas.").

Icelandair offers no authority supporting an interpretation of "service" in the Airline Deregulation Act that encompasses ordinary dispute resolution behavior far removed from the actual flight. On the contrary, all the cases it cites directly implicate core airline services such as boarding, delivery, or in-flight luggage storage. See Seklecki v. Ctr. for Disease Control & Prevention, 635 F. Supp. 3d 15, 23–25 (D. Mass. 2022) (requirement of face coverings while onboard); Gill v. JetBlue Airways Corp., 836 F. Supp. 2d 33, 39 (D. Mass. 2011) (accommodation of passenger's disability during boarding); Chukwu v. Bd. of Dirs. Brit. Airways, 889 F. Supp. 12, 13 (D. Mass. 1995), aff'd sub nom., Azubuko v. Bd. of Dirs., Brit. Airways, 101 F.3d 106 (1st Cir. 1996) (denial of boarding); Tobin v. Fed. Exp. Corp., 775 F.3d 448, 452 (1st Cir. 2014) (mislabeling and misdelivery of FedEx package); Hodges v. Delta Airlines, Inc., 44 F.3d 334, 338 (5th Cir. 1995) (injury from overhead luggage compartment). And DiFiore, as discussed above, involved a service for the actual handling of baggage at the airport. See DiFiore, 646 F.3d at 82.

Accordingly, the court finds the Airline Deregulation Act does not preempt the promissory estoppel and Chapter 93A claims here, which are not directed at a "service" provided by Icelandair as an airline but its dispute handling as a business. And because the court finds the claims unrelated to a "service" under the Airline Deregulation Act, the court need not address whether those claims "seek[] to enlarge the contractual obligations that the parties voluntarily

8

adopt[ed]." Def.'s Mem. 6–7 [Doc. No. 53] (quoting Northwest, Inc. v. Ginsberg, 572 U.S. 273, 276 (2014)).[4]

Because the Airline Deregulation Act does not preempt the surviving state common law claims, the court declines to exercise its supplemental jurisdiction over those claims under 28 U.S.C. § 1367(c)(3). As the Supreme Court recently reiterated, once a district court has dismissed all claims over which it has original jurisdiction, "the court may (and indeed, ordinarily should) kick the case to state court." Royal Canin U. S. A., Inc. v. Wullschleger, 604 U.S. 22, 32 (2025) (citing Mine Workers v. Gibbs, 383 U.S. 715, 726–27 (1966)).

Accordingly, the court does not reach the merits of Deugoue's promissory estoppel and Chapter 93A claims, despite Icelandair's extensive briefing. Def.'s Mem. 9–15 [Doc. No. 53].

## IV. Conclusion

For the foregoing reasons, Icelandair's Motion for Judgment on the Pleadings [Doc. No. 52] is DENIED. The case is DISMISSED without prejudice to Deugoue refiling his claims for promissory estoppel and violation of Chapter 93A in state court.

IT IS SO ORDERED.

July 8, 2025                                         /s/ Indira Talwani
                                                     United States District Judge

---

[4] This facet of Icelandair's argument is in reference to the Icelandair International Passenger Rules and Fares Tariff No. FI1, CTA No. 447, DOT No. 527, which was attached as Exhibit C to the Affidavit of Matthew Lysiak ("Lysiak Aff.") [Doc. No. 45-5]. But as Icelandair acknowledges, that document exists "outside of the four corners of the complaint[.]" Def.'s Mem. 5 [Doc. No. 53]. And as the court previously noted when it excluded an earlier version of this same document from Icelandair's motion to dismiss, the document "do[es] not fall within the narrow exceptions permitted by the First Circuit" for consideration of matters outside of the pleadings "on a motion under Rule 12(b)(6) or 12(c)" without converting the motion into one for summary judgment. Elec. Order [Doc. No. 43]; compare Lysiak Aff., Ex. C [Doc. No. 45-5] (Tariff No. FI1 effective October 27, 2019), with Mem. ISO Mot. to Dismiss, Ex. D [Doc. No. 29-5] (Tariff No. FI-1 effective March 16, 2008).